## Bentley v. Commonwealth.

### Feb. 21, 1939.

R. MONROE FIELDS, Judge.

W. W. BARRETT and EMMET G. FIELDS for appellant.

HUBERT MEREDITH, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, George Bentley, was tried in the Pike circuit court under an indictment charging him with the willful murder of Zeigler White, and was convicted of manslaughter and his punishment fixed at 18 years' imprisonment. The sole ground relied upon for a reversal of the judgment is that the evidence was not sufficient to take the case to the jury, and therefore appellant's motion for a directed verdict of acquittal should have been sustained. Appellant's contention seems to be based on the theory that the proof shows without contradiction that he acted in his necessary self-defense.

Appellant and Zeigler White lived on Long Fork of Shelby Creek in Pike county, and apparently had been friends until the day the homicide occurred. On that

day they and several other young men drove to Letcher county in Elmer Johnson's truck. Liquor was purchased at McRoberts, and White became intoxicated. Appellant testified that he drank a small quantity of beer, but was not drunk. On the return trip appellant rode in the bed of the truck and White stood on the runningboard. It seems that during the day White and Bentley had ridden in an aeroplane, and Bentley jokingly accused White of being frightened. All of the witnesses stated that Bentley continued to "kid" White on the way home, until the latter became angry and cursed Bentley. Jack Stewart testified that after this occurred White asked Elmer Johnson to permit him to ride in the cab, and Johnson refused, telling him to "go on back there." White started to climb onto the bed of the truck when, according to the witness this occurred:

> "George said I will kill the son-of-a-bitch and grabbed a two by four and struck him in the head and Zeigler never fell and he struck him in the back of the head and as he went to fall George hit him two licks in the back and he laid there with his eyes closed and never even spoke, then went on up there, the truck did and I said somebody will have to pay for this and George said I don't have to pay for a damn thing, stop this damn truck Irvine and let me out, I will kill every son-of-a-bitching one and he jumped out and grabbed a big rock and threw there at me and Ezra Fleming."

Ezra Fleming's testimony was substantially the same as Stewart's, and they were corroborated by others who were in the truck. This happened on Saturday afternoon, and White died the following Monday morning. Although, with the assistance of one of his companions, he was able to walk to his home, a distance of about a mile, he never spoke after he was struck. The proof showed that his skull was crushed and his shoulder blade broken.

If the testimony of the witnesses for the commonwealth is true, appellant was guilty of willful murder. Appellant testified that White was angered by a jocular remark made by appellant; that he cursed appellant, called him a vile name, and said: "If you don't like it, I will come back there and cut your head off." White was riding on the runningboard of the truck, and as he started to climb over the side of the truck he put his

hand in his pocket. Appellant thought he was reaching for a knife, and picked up a stick of wood and struck him.

Appellant's testimony alone would have justified the jury in concluding that he used more force than was necessary under the circumstances, but, when considered as a whole, there was ample evidence to refute his contention that he killed White in his necessary self-defense. One or two witnesses testified that they saw White with a knife during the day, but none of the witnesses, including appellant, stated that White had a knife in his hand at the time he was struck. A reasonable deduction from the evidence is that appellant goaded the deceased into using an opprobrious epithet, and that he became enraged and made the deadly assault when he neither believed nor had reasonable grounds to believe that he was in danger of bodily harm at the hands of his victim. There was ample evidence to take the case to the jury and to sustain its verdict.

The judgment is affirmed.